STUART, Justice.
Dynegy, Inc., and Dynegy Marketing & Trade (“DMT”)[1] appeal from the denial of their motion to dismiss Cherokee Nitrogen Company’s third-party complaint. The trial court certified the order denying the motion for an interlocutory appeal, pursuant to Rule 5, Ala. R.App. P., and this Court granted permission to appeal. We affirm.

Background

Nelson Brothers, L.L.C., has a manufacturing facility in Colbert County at which it manufactures explosives; Nelson Brothers uses ammonium nitrate in the manufacturing process. Cherokee Nitrogen Company is in the business of manufacturing ammonium nitrate; natural gas is one of the primary components used in manufacturing ammonium nitrate.
In October 2001, Cherokee Nitrogen entered into a contract with Nelson Brothers pursuant to which ■ Cherokee Nitrogen agreed to supply Nelson Brothers with ammonium nitrate and to make “reasonable efforts” to reduce the costs of the ammonium nitrate it supplied to Nelson Brothers. Cherokee Nitrogen obtained some of the natural gas it used in manufacturing ammonium nitrate from DMT.
On April 2, 2003, Nelson Brothers sued Cherokee Nitrogen alleging that Cherokee Nitrogen had breached the contract insofar as the price it charged for the ammonium nitrate provided to Nelson Brothers under the contract; Nelson Brothers alleged that Cherokee Nitrogen had overinflated the price charged for the ammonium nitrate because the price Cherokee Nitrogen paid for the natural gas used in its manufacturing process was overinflated. Nelson Brothers also sought a judgment declaring that Cherokee Nitrogen had overcharged it for the natural gas Cherokee Nitrogen used in manufacturing the ammonium nitrate sold to Nelson Brothers and that it was due a refund in the amount of the difference between the price Chero *15 kee Nitrogen charged it for the natural-gas component of the ammonium nitrate and the commercially reasonable price it should have paid for that gas.
On the same date that Nelson Brothers filed its complaint, Cherokee Nitrogen answered the complaint and immediately filed a third-party complaint against DMT and Dynegy. Cherokee Nitrogen alleged that it had purchased its natural gas from DMT pursuant to a contract between Cherokee Nitrogen and DMT. Cherokee Nitrogen alleged that in that contract it and DMT had agreed that the price of natural gas Cherokee Nitrogen purchased from DMT would be set according to, among other things, a commodity-index-reporting publication known as the “Gas Daily.” Cherokee Nitrogen alleged that DMT, Dynegy, and other natural-gas market participants provide pricing and volume information to index-reporting firms, that those firms then make the pricing and volume information available to trade publications such as Gas Daily, and that those publications are then disseminated to parties involved in the natural-gas market. According to Cherokee Nitrogen, the pricing information contained in those publications affects the retail market price , of natural gas.[2] Cherokee Nitrogen alleged that DMT, Dynegy, and others reported false information to index-reporting firms, which in turn resulted in increased retail prices for natural gas. Cherokee Nitrogen alleged that DMT and Dynegy reported this false information to skew and/or manipulate the information reported by Gas Daily, and other commodity-index-reporting firms and/or publications, to the financial benefit of DMT and to the detriment of its retail customers, including Cherokee Nitrogen.
Cherokee Nitrogen also alleged in its third-party complaint that on December 18, 2002, DMT and an affiliate of DMT agreed to pay a fine of $5 million to settle a threatened administrative proceeding brought by the United States Government regarding the false reporting of natural-gas trading information and a failure to maintain certain required records relating to that reported trading information.[3]
In its complaint, Cherokee Nitrogen asserted claims of promissory fraud, misrepresentation, suppression, deceit, • unjust enrichment, breach of agreement, and conspiracy. Cherokee Nitrogen expressly waived any claim or cause of action arising under the Constitution or laws of the United States or under any federal statute, regulatory agency regulations, or federal common law.
On October 17, 2003, DMT and Dynegy filed a motion to dismiss the third-party complaint. DMT and Dynegy asserted that the complaint was barred by the doctrines of preemption (both field and conflict) and the filed-rate doctrine. The parties submitted briefs on DMT and Dy-negy’s motion, each citing numerous documents, rulings, and opinions issued by the Federal Energy Regulatory Commission (“the FERC”), and caselaw from other jurisdictions. The trial court conducted a hearing on DMT and Dynegy’s motion. On December 11, 2003, the trial court denied the motion to dismiss. The trial court certified the order for interlocutory appeal, and this Court granted DMT and *16 Dynegy permission to appeal. See Rule 5, Ala. R.App. P.

Standard of Review

 “The appropriate standard of review of a trial court’s denial of a motion to dismiss is whether ‘when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle [the pleader] to relief. This Court does not consider whether the plaintiff will ultimately prevail, but only whether the plaintiff may possibly prevail. A ‘dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.’ ”
Lyons v. River Road Constr., Inc., 858 So.2d 257, 260 (Ala.2003) (quoting Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993) (other citations omitted)).

Discussion

DMT and Dynegy argue that the trial court erred in denying their motion to dismiss the third-party complaint filed by Cherokee Nitrogen. .DMT and Dynegy argue that all of the claims asserted by Cherokee Nitrogen are based on conduct within the exclusive jurisdiction of the FERC and that those claims are, therefore, preempted. More specifically, DMT and Dynegy argue that allowing Cherokee Nitrogen to recover on its claims would require the trial court to interfere with the FERC’s jurisdiction over' inaccurate and false index reporting and would require the trial court to enter rulings that conflict with conclusions and determinations by the FERC regarding the same subject and with remedies established by the FERC for the same alleged misconduct. Thus, DMT and Dynegy assert that allowing the trial court to consider Cherokee Nitrogen’s claims against them would violate the doctrines of field preemption and conflict preemption. DMT and Dynegy also rely on the filed-rate doctrine, arguing that
“Cherokee [Nitrogen] is claiming that published price indices, which are based primarily on rates in FERC-governed transactions, were inflated. The only way for a court to determine damages would be to go back to the FERC-gov-erned transactions that underlie those price indices, to set aside the allegedly inflated rates that FERC allowed and somehow to determine new, ‘non-inflated’ rates. The filed rate doctrine forbids such an exercise.”
(DMT and Dynegy’s brief at pp. 9-10.)
In rebuttal, Cherokee Nitrogen argues, among other things, that this case involves the retail pricing of natural gas and that DMT and Dynegy’s arguments and authorities'are applicable only in the context of the wholesale market. (See DMT and Dynegy’s brief at pp. 18-23 for cases cited in support of DMT and Dynegy’s position on appeal and Cherokee Nitrogen’s brief at n. 2 for its rebuttal of those cases.) Cherokee Nitrogen acknowledges that the FERC possesses exclusive authority over gas transactions that are made for resale and that occur in interstate commerce, but it argues that the FERC does not regulate intrastate sales or natural-gas sales made to end-use consumers, i.e., retail sales. Cherokee Nitrogen further alleges that it purchased natural gas from DMT and Dy-negy for use in the manufacture of ammonium nitrate, which, it argues, makes Cherokee Nitrogen an end-use consumer.
Cherokee Nitrogen also points out that DMT and Dynegy’s motion to dismiss is based upon numerous assumptions of fact that cannot be proven by the pleadings at this juncture of the proceeding. Cherokee Nitrogen asserts that DMT and Dynegy’s *17 motion to dismiss is premature for the following reasons, among others.
Cherokee Nitrogen argues that DMT and Dynegy are asking this Court simply to assume as true their statement that the price indices being questioned here routinely include prices resulting from transactions subject to the FERC’s exclusive authority. Cherokee Nitrogen asserts that the FERC does not regulate private gas-price indices and that it is those private gas-price indices, as well as the information supplied to those compiling the private indices, that are at issue in this case. Cherokee Nitrogen explains that any regulatory authority the FERC may have over transactions reported to the price indices would relate only to wholesale transactions and not to retail transactions. Cherokee Nitrogen asserts that the reporting of information regarding retail transactions to private gas-price indices is done voluntarily and is not done pursuant to any rate-making or rate-filing process approved by the FERC.
Cherokee Nitrogen argues that DMT and Dynegy improperly assert, without establishing, that “Cherokee’s claims are based upon conduct over which the FERC has authority.” (Cherokee Nitrogen’s brief at p. 37.) Cherokee Nitrogen argues that DMT and Dynegy seek to dismiss the third-party complaint by arguing that Cherokee Nitrogen’s claims and the damages it seeks (which it says arise out of a retail transaction and are thus not subject to FERC regulation) will somehow imper-missibly affect wholesale rates (which Cherokee Nitrogen concedes are filed with the FERC and are subject to FERC regulation). However, Cherokee Nitrogen asserts that DMT and Dynegy have not established how those claims and the concomitant damages will affect wholesale rates filed with the FERC. Cherokee Nitrogen argues that its claims can be resolved and that the index can be recalculated without affecting wholesale natural-gas rates.
Cherokee Nitrogen also argues that DMT and Dynegy seek to dismiss the third-party complaint without even establishing the particular rate mechanism that was used to price the transactions between Cherokee Nitrogen, on the one hand, and DMT and Dynegy, on the other. Cherokee Nitrogen points out that the record does not establish whether the price it paid for natural gas was based upon the published rate in Gas Daily or upon the price posted on the New York Mercantile Exchange (N.Y.MEX), which, Cherokee Nitrogen alleges, was an alternative allowed under its contract with DMT. (Cherokee Nitrogen’s brief at pp. 38-39.)
Cherokee Nitrogen argues that DMT and Dynegy rely almost exclusively on statements and opinions by the FERC but that those statements and/or opinions concern the regulation of wholesale gas transactions. Cherokee Nitrogen argues that DMT and Dynegy failed to establish that those statements and/or opinions apply to the transactions at issue here, which Cherokee Nitrogen argues are retail transactions.
Cherokee Nitrogen also asserts that it is possible to calculate the damages it seeks without interfering with FERC-governed wholesale rates. Cherokee Nitrogen again points out that retail rates are not approved by the FERC and that they are therefore not subject to the filed-rate doctrine.

Analysis

It appears that, over the last few years, the FERC has been investigating the manner in which information is provided to natural-gas price-reporting indices. It also appears that the FERC’s statutory authority under 15 U.S.C. § 717 is limited to wholesale transactions that take place in *18 interstate commerce; however, the provisions of that chapter also apply to “natural gas companies engaged in such transportation or sale.” Additionally, 15 U.S.C. § 717c(a) provides:
“All rates and charges made, demanded, or received by any natural-gas company for or in connection with the transportation or sale of natural gas subject to the jurisdiction of the [FERC], and all rules and regulations affecting or pertaining to such rates or charges, shall be just and reasonable, and any such rate or charge that is not just and reasonable is declared to be unlawful.”
However, the extent of the FERC’s jurisdiction is not completely clear from a simple reading of these statutes, the third-party complaint, the motion to dismiss and supporting brief, and the responsive brief.
For example, in some of the FERC documents cited by DMT and Dynegy, FERC staff states that the FERC has explored the connection between publicly reported gas indices and electric and natural-gas pricing in the western United States during 2000-2001. The FERC has recognized the occurrence of price manipulation and false reporting of information; several companies admit to such practices. Regulations were enacted in 2003 to address such price manipulations as they affect the wholesale market. See 18 C.F.R. § 284.403. However, we do not understand, how or if those regulations impact the retail market, and DMT and Dynegy have not answered these questions.
Therefore, at this juncture, we cannot say that it is impossible, under any set of circumstances, for Cherokee Nitrogen to prevail on any of its claims. In order to determine that, the, trial court must determine what the FERC does and what the FERC does not do. We are still uncertain of the- answer to that question and how that answer .relates to the allegations by Cherokee Nitrogen. For that reason, we agree that the motion to dismiss was properly denied at this time.
We affirm the denial of DMT and Dyne-gy’s motion to dismiss the third-party complaint.
AFFIRMED.
NABERS, C.J., and BROWN and HARWOOD, JJ., concur.
SEE, J., concurs in the result.

. DMT and Dynegy are, related entities.

. For purposes of this opinion, we have greatly simplified the allegations concerning the information-reporting process as described by Cherokee Nitrogen, DMT, and Dynegy.

. Although the complaint does not specify to whom DMT paid this fine, it appears that it was paid to the Securities and Exchange Commission or to the Commodity Futures Trading Commission. It was not paid to the Federal Energy Regulatory Commission.